**UNITED STATES of America**

**v.**

**Martin SCHWIMMER and Mario Renda, Defendants.**

**No. 87 CR 423(SS).**

United States District Court, E.D. New York.

Nov. 10, 1988.

Andrew J. Maloney, U.S. Atty. E.D.N.Y. and Edward A. McDonald, Atty.-in-Charge, Organized Crime Strike Force, E.D.N.Y. (Bruce Maffeo, Sp. Atty., Alan Friedman, Sp. Atty., of counsel), for U.S.

Robert S. Fink, New York City (Kostelantz Ritholz Tigue & Fink, New York City, Kathryn Keneally, of counsel), for defendant Schwimmer.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

During deliberations, questions were raised by the jury regarding the interpretation of the phrase "bona fide compensation" used in the context of 18 U.S.C.

1. Section 1954 provides, in pertinent part, the following:

 Whoever being—(4) a person who, or an officer, counsel, agent or employee of an organization which, provides benefit plan services to such plan receives or agrees to receive or solicits any fee, kickback, commission, gift, loan, money, or thing of value because of or with intent to be influenced with respect to any of his actions, decisions, or concerning such plan or any person who directly or indirectly gives or offers, or promises to gift or offer, any fee, kickback, commission, gift, loan, money, or thing of value prohibited by this section, shall be fined not more than $10,000 or imprisoned not more than three years, or both: *Provided,* That this section shall not prohibit the payment to or acceptance by any person of *bona fide* salary, compensation, or other payments made for goods or facilities actually furnished or for services actually performed in the regular course of his duties as such person, administrator, offi-

§ 1954.[1] The Court ruled that in order for the trustees of an employee benefit plan to determine whether compensation is bona fide, the trustees must be given full disclosure of the details of such compensation. The following embodies the Court's ruling.

Based on the questions asked by the jury,[2] I find that it necessary to decide how "bona fide compensation" should be interpreted in construing § 1954.

■ The definition of bona fide which appears in the charge is serviceable,[3] *see Final Jury Charge* 22 (October 25, 1988), and is taken from Black's Dictionary. *See Blacks Law Dictionary* 223 (4th ed. 1951). The real problem, however, is how "Bona fide" should be defined and read in the context of § 1954 and in light of that section's legislative history. That answer requires a study of the legislative history of § 1954.

Section 1954 was enacted as part of the "Welfare and Pension Plans *Disclosure* Amendment Act of 1962." Pub.L. 87–420, § 17(e), March 20, 1962 (emphasis added). This act was found necessary when it became evident that the abuses in administering employee benefit plans that were supposedly remedied in the *1958* Welfare and Pension Plan Disclosure Act were still occurring. *See* H.R.Rep. 998, 87th Cong., 2nd Sess., *reprinted* in 1962 U.S.Code Cong. & Admin.News 1532, 1533.

cer, trustee, custodian, counsel, agent, or employee of such plan, employer, employee organization, or organization providing benefit plan services to such plan.
(Emphasis added).

2. The jury's first question, which was rephrased by the court and adopted by the jury, is as follows: "So, that if you, the advisor, go out and you put it [the investment of union funds] somewhere where it is earning 18 percent and you tell the union it is making 17 percent, is that *bona fide?*" *See* Trial Transcript at 2487. (emphasis added). The jury's second question was: If the defendant were charging a very high commission but the union knew the amount, would that be *bona fide? See* Trial Transcript at 2488 (emphasis added).

3. The definition provided in the charge is as follows: "'Bona fide' means in good faith or without deceit or fraud."

Before discussing those abuses I want to address the purpose of the 1958 Act. Section 2 of that Act states that: "it is desirable, in the interests of Employees and their beneficiaries ..., that *disclosure* be made with respect to the operation and administration of [employee benefit] plans." (Emphasis added). The section goes on to say that it is the policy of the act "to require the *disclosure* and reporting to participants and beneficiaries of financial and other information with respect to the [plan]." (Emphasis added).

In 1961, after considering the effectiveness of the 1958 Act, Congress passed the 1962 (Amendment) Act to supply, in the words of the House Report, the "enforcement teeth which are lacking in the existing law." As part of that legislation, Congress enacted § 1954. The House report stated that "the need for [this provision] is plain" when one considers the findings leading to the passage of the "Douglas Bill" (the 1958 Act). *See* 1962 U.S.Code Cong. and Admin.News at 1538. Indeed, the congressional record echoes the need for § 1954. *See, e.g.,* 108 Cong.Rec. 1924 (1962) (remarks of Senator McNamara) ("The last important set of amendments [to the 1958 Act] establish criminal sanctions for *violations of trust.*"); 108 Cong.Rec. 1739 (1962) (remarks of Representative Smith):

> The [1962] bill also makes kickbacks, bribery, and looting from these funds Federal felonies. These were the very abuses which initiated legislative action in this field and yet as the law stands now, none of these flagrant abuses are Federal crimes.

Senator Javits brought home the necessity for the 1962 Act:

> It seems to me that there is a fiduciary relationship imposed on anyone who is charged with the administration of a fund, whether it is technically a fiduciary, like a bank or a trust company, or not; and that, therefore, if we were merely going to depend on the criminal statutes and other statutes of accountability which relate to a fiduciary, we would not have this bill at all.

> The point is that we feel there must be in the Federal law greater sanctions than are inherent in the usual laws relating to fiduciaries, which are essentially State administered; hence the reason for the bill.

108 Cong.Rec. 1931 (1962).

The Douglas committee, which investigated the administration of Employee Benefit Plans, unearthed instance upon instance where exorbitant and unreported commissions were paid to brokers and insurance companies doing business with union employee benefit plans. S.Rep. No. 1734, 84th Cong., 2d Sess. (1956). The ultimate conclusion of Douglas' investigation was that in order to deter and prevent these abuses, *there must be full disclosure of the costs expended to administer and operate the plans. Id.* In the words of Senator Douglas: "For sunlight is a great disinfectant. Investors and beneficiaries are entitled to the truth." *See* 108 Cong. Rec. 1937 (1962).

 The legislative history, therefore, makes it clear that congress set out to ban all conflict of interest payments when it enacted § 1954, *see U.S. v. Romano,* 684 F.2d 1057, 1064 (2d Cir.1982), by requiring all fiduciaries of benefit plans to be honest and straight-forward when handling union funds. This, Congress felt, could only be obtained by requiring fiduciaries to disclose the financial activities involved in administering plan funds, and then, leaving it to the beneficiaries to decide whether their funds were being properly handled.

A review of § 1954 itself proves this view of the statute correct. Throughout § 1954, Congress consistently used very broad language to protect plan beneficiaries from dishonest or unfaithful fiduciaries. *See Romano, supra,* 684 F.2d at 1064. First, the statute encompasses almost every conceivable person who could deal with or administer a benefit plan. *See* § 1954(1)–(4). Then, the statute prohibits the receipt of *any* fee, kickback, commission, gift, loan, money, or thing of value. Moreover, the statute punishes the receipt of any of these things either "because of," or with "the intent to be influenced" with

respect to any decision concerning a benefit plan. Thus Congress was not only concerned with corrupt transactions as indicated with the "intent to influence" language, it also was concerned with fiduciaries of benefit plans taking advantage of their position in any way. *See Romano, supra*, 684 F.2d at 1064. In short, Congress's broad language reflects its intent to reach all fiduciaries who profit as a result of their decisions to invest union funds. *See id.*

After reviewing the legislative history, the sparse case law, and the statute itself, I find that the only reasonable construction of bona fide is to require disclosure. In order for beneficiaries to decide whether compensation to a fiduciary who handles the investment of union funds is bona fide, the beneficiaries *must be told* what the compensation is. It would be wholly inconsistent with the Act if a fiduciary could determine for himself what bona fide compensation should amount to. This decision must be left to the plan beneficiaries.

■ The second question asked by the jury is: if the defendant were charging an extraordinarily high commission, but the union knew about it, would that be bona fide? I believe it would because as long as there is full disclosure, the union is able to make its own contracts, agreements, or understandings.

SO ORDERED.